**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| RICKY CROUCHET AND JANMARIE HOMRICH | * | CASE NO: |
| Plaintiffs | * | JUDGE |
| v. | * | MAGISTRATE: |
| VOLKSWAGEN GROUP OF AMERICA, INC. | * | |
| Defendant | * | |

***********************************

Plaintiffs, Ricky Crouchet and Janmarie Homrich, by the undersigned counsel, state for their Complaint against VOLKSWAGEN GROUP OF AMERICA, INC., as follows:

1. Since at least 2009 and until the present Volkswagen Group of America, Inc., ("Volkswagen") has manufactured and sold cars in the United States with diesel engines installed in various model cars, including the Jetta, the Beetle, the Audi A3, the Golf and the Passat models.

2. The engines in these model cars were marketed as a "TDI® clean diesel engine." They were not clean.

3. Federal law, specifically the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations, administered by the Environmental Protection Agency ("EPA"), requires automobile manufacturers to install emission control devices to ensure that each diesel vehicle sold in the U.S. complies with Clean Air Act emission standards

during operation, and to certify that such devices have been installed and are operative and that they meet the standards.

4. Between 2009 and the present Volkswagen installed software that allowed the engine control unit in the diesel engine installed in the Jetta, the Jetta Sportwagen, the Golf, the Audi A3, the Beetle, the Beetle Convertible, the Passat, and the Golf Sportwagen to detect when the car was undergoing an emissions test (the "Affected Vehicles").

5. Volkswagen sold at least 482,000 Affected Vehicles in the U.S. since 2009.

6. When the software in the Affected Vehicles' Electronic Control Module ("ECM") detects environmental and vehicle parameters that resemble an emissions test, the ECM activates the pollution control devices installed on the car to enable an emissions test to be passed.

7. Volkswagen intentionally affected this result by using a "defeat device" that it did not describe to the EPA in the Certificate of Conformity application that it submitted to the EPA. Automobiles equipped with "defeat devices" cannot be certified by the EPA, and are illegal to sell in the U.S.

8. Thus, when the ECM software does not report that the car is undergoing an emissions test, the emission control devices required by the U.S. Clean Air Act are wholly or partially turned off and bypassed. The result is that under normal driving conditions the federally required pollution control devices that control emissions from the "TDI® clean diesel engine" are inoperative or greatly impaired. The EPA has found that this "defeat device" allows between 10 and 40 times the allowed level of nitrous oxide to be emitted from the Affected Vehicles, depending on the type of drive cycle (i.e., city or highway driving). Nitrous oxide is a reactive gas that reacts with volatile organic compounds in

the atmosphere to produce ozone on hot summer days, which, in turn, is a health hazard, and the EPA regulates its emission.

9. The result is that the Affected Vehicles routinely emit pollution far in excess of that allowed by the Clean Air.

10. Another result is that fuel mileage increases in ways that it would not if the required emission control devices were fully operative.

11. Volkswagen marketed these diesel cars as containing a "TDI® clean diesel engine." Volkswagen also marketed these diesel cars as "clean" and "green" cars. These were false representations on which the public, including Dennis Thompson, relied, in deciding whether to purchase a diesel engine vehicle.

12. Volkswagen has been ordered by the EPA to recall the above-described vehicles and repair them so that they comply with emissions requirements during normal operation.

13. Volkswagen will not be able to make the above-described vehicles comply with emissions standards without substantially degrading their horsepower and efficiency.

14. Even if Volkswagen is able to comply with the EPA order Plaintiff and Class Members will suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and will not perform as advertised. This will result in a diminution in value of every Affected Vehicle and it will cause owners to pay more for fuel while using their vehicles.

15. Further, Plaintiff and the class did not receive the "TDI® clean diesel engine" they bargained for due to the false statement and/or fraudulent misrepresentation of Volkswagen. Nor did Plaintiff and the class received a "green" or "clean" car.

16. As a result of Volkswagen's unfair, deceptive and/or fraudulent business practices, and its failure to disclose that under normal operating conditions that its diesel engines emitted up to 40 times the allowed emission levels of regulated gasses, owners and/or lessees of the above mentioned model cars have suffered losses in money and/or property and will continue to do so.

17. Venue is proper in this District under 28 US.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district. Plaintiff resides in this District and Volkswagen has advertised, marketed, sold and leased the Affected Vehicles within this District.

## PARTIES

18. The Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation, with its principal place of business located in Herndon, Virginia. It does business in all 50 states and in the District of Columbia. At all relevant times Volkswagen designed, manufactured, imported, distributed, sold, warranted, advertised and marketed the Affected Vehicles with the "TDI® clean diesel engine" that contained a secret "defeat device" in the ECM software.

19. Plaintiff, Ricky Crouchet, is an individual residing in St. Tammany Parish, Louisiana. In March 2015, Plaintiff purchased a new 2009 Volkswagen Jetta with a "TDI® clean diesel engine" from Ray Brandt Volkswagen, an authorized Volkswagen dealer in Harvey, Louisiana. Plaintiff still owns this vehicle

20. Plaintiff, Janmarie Homrich, is an individual residing in St. Tammany Parish, Louisiana. In March 2015, Plaintiff purchased, as a co-owner with Ricky Crouchet, a new 2009 Volkswagen Jetta with a "TDI® clean diesel engine" from Ray Brandt

Volkswagen, an authorized Volkswagen dealer in Harvey, Louisiana. Plaintiff still owns this vehicle.

22. The vehicle purchased by Plaintiffs, unknown to them, at the time they purchased the vehicle, was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit up to 40 times the allowed level of pollutants, including nitrous oxide. The use of the "defeat device" by Volkswagen has caused Plaintiffs out-of-pocket loss; future attempted repairs, and diminished value of the vehicle. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiffs, so Plaintiffs purchased the vehicle on the reasonable, but mistaken, belief that it complied with United States emissions standards, was properly EPA certified, and would retain all of their operating characteristics throughout their useful life.

23. Plaintiffs selected and ultimately purchased the vehicle, in part, because of the "TDI® clean diesel engine," as represented through advertisements and representations made by Volkswagen. Specifically, prior to the purchases of the vehicle, Plaintiffs viewed television advertisements regarding the "TDI® clean diesel engine." The authorized Volkswagen dealer told plaintiffs that they was purchasing a vehicle that was a low emission, high mileage "green" automobile. Plaintiffs recall that Volkswagen advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its

certification of EPA compliance. Had Volkswagen disclosed that the "TDI® clean diesel engine" in Plaintiff's vehicle actually emitted up to 40 times the permitted levels of pollutants, including nitrous oxide, Plaintiff would not have purchased their Affected Vehicle, or would have much paid less for the vehicle, if it could even have been legally marketed.

24. Plaintiffs have suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the "TDI® clean diesel engine," including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the "TDI® clean diesel engine" prior to purchase.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

25. Volkswagen intentionally designed the "defeat device" into the software of the ECU's in the Affected Vehicles. The EPA has described the device as a "sophisticated software algorithm" that detects when the vehicle in undergoing an emissions test.

26. The defeat device was not discoverable by the Plaintiffs. The EPA began investigating emissions problems in certain of the Affected Vehicles in 2014. When the EPA contacted Volkswagen about the issue Volkswagen misled the EPA claiming that the high emissions results were attributable to various technical issues and unexpected in-use conditions. Only when the EPA and California Air Resources Board persisted did Volkswagen admit, in 2015, "It had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing." (EPA September 18, 2015 letter to Volkswagen,

http://www3.epa.gov/otaq/cert/documents/vw-nov-caa- 09-18-15.pdf (last viewed 9-21-15)).

27. Plaintiffs could not have discovered that Volkswagen was concealing its deception or fraud through the exercise of reasonable diligence within any applicable period of limitation.

28. Nor did Plaintiffs know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had misled the EPA and falsely certified the required Certificate of Compliance as to each model of the Affected Vehicles.

29. Nor did Plaintiffs know, and they could not have learned through the exercise of reasonable diligence, that Volkswagen had falsely advertised, marketed and warranted the engine system in the vehicles as a "TDI® clean diesel engine" when the fact was that it was an illegally dirty engine.

30. Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.

**Estoppel**

31. Volkswagen was and is under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the vehicles. Volkswagen actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

32. The causes of action alleged herein did not accrue until Plaintiffs discovered that their vehicles had an illegal "defeat device."

33. However, Plaintiffs had no realistic ability to discern that the vehicles were defective until—at the earliest—September 18, 2015 when the EPA Notice of Violation became public.

34. Therefore, Plaintiffs' causes of action did not accrue until September 18, 2015.

**COUNT I – COMMON LAW FRAUDULENT CONCEALMENT**

35. Plaintiff incorporates the allegations set forth in paragraphs 1 through 34 above as paragraphs 1 through 34 of Count I as if fully set forth herein.

36. Volkswagen intentionally designed the "defeat device" to circumvent the requirement of the Clean Air Act, and falsely certified to the EPA that the Affected Vehicles were in compliance with those requirements.

37. At the same time, between 2009 and the present, Volkswagen intentionally marketed and advertised the Affected Vehicles as "green" or "clean" and described the engine as a "clean diesel."

38. Plaintiffs reasonably relied on the representations that Volkswagen made in brochures, its website, advertisements, and in the owner's manual, in believing that they were paying a premium for a fuel efficient "clean" automobile with a "TDI® clean diesel engine."

39. Plaintiffs did not know, and had no way of knowing, that the representations of Volkswagen were false.

54. Volkswagen had a duty to disclose the true facts about the Affected Vehicles to potential and actual customers, and in addition to the EPA.

40. Volkswagen breached its duties to profit at the expense of the Plaintiffs, and the public who put at risk from illegally elevated nitrous oxide emissions.

41. Had the Plaintiffs known the true facts regarding the Affected Vehicles, they would not have purchased the vehicle. In fact, had Volkswagen disclosed the true facts to the EPA the Affected Vehicles that the Plaintiffs own could not have been sold to them.

42. Volkswagen's fraudulent concealment and suppression of the true facts regarding the Affected Vehicles has damaged the Plaintiffs in many ways. Plaintiffs were fraudulently induced to purchase that which they would not have. Volkswagen charged plaintiffs a premium for a fuel efficient and "clean" automobile. Plaintiffs' now own vehicles that have lost value will cost money to fix, and which may not even be saleable.

43. Volkswagen is therefore liable to Plaintiffs for all damages they incurred and will incur.

**COUNT II**
**REDHIBITION**

44. Plaintiffs repeat each and every allegation contained in the prior paragraphs of this Complaint.

45. Defendants, as manufacturer of the defective vehicle, are responsible for damages caused by the failure of its product to conform to well-defined standards.

46. In particular, the vehicle contains a vice or defect which rendered it useless or its use so inconvenient that a reasonable buyer would not have purchased it.

47. Defendants manufactured, sold and promoted the vehicle and placed the vehicle into the stream of commerce. Under Louisiana law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the things sold. La. C.C.P. Art. 2520.

48. The vehicle as sold and promoted by Defendants possessed a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous as described above, which rendered the vehicle useless or its use so inconvenient that it must presumed that a buyer would not have bought the vehicle had she known of the defect.

49. Pursuant to La. C.C.P. Art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject product.

50. The vehicle alternatively possesses a redhibitory defect because the vehicle was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous as described above, which diminished the value of the vehicle so that it must be presumed that a reasonable buyer would still have bought the vehicle, but for a lesser price, had the redhibitory defect been disclosed. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

51. As the manufacturer of the vehicle, under Louisiana law, Defendants are deemed to know that the vehicle contained a redhibitory defect. La. C.C.P. Art. 2545. Defendant is liable as a bad faith seller for selling a defective product with knowledge of a defect and thus is liable to Plaintiffs for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, respectfully request that this Court enter a judgment against Defendants and in favor of Plaintiffs and grant the following relief:

A. Declare, adjudge and decree the conduct of Volkswagen Group of America, Inc. as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;

B. Award Plaintiff actual, compensatory damages, or, in the alternative, statutory damages, as proven at trial;

C. Award Plaintiff exemplary damages in such amount as proven;

D. Award Plaintiff reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

E. Award Plaintiff such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

**JURY TRIAL DEMAND**

Plaintiffs request a trial by jury on the legal claims, as set forth herein.

Respectfully submitted,

**Becnel Law Firm, LLC**

By: /s/ Salvadore Christina, Jr.
Salvadore Christina, Jr. (27198)
Matthew Moreland (24567)
Jennifer Crose (32116)
P.O. Drawer H
Reserve, LA 70084
Telephone: 985.536.1186
Facsimile: 985.536.6446
mmoreland@becnellaw.com
schristina@becnellaw.com
jcrose@becnellaw.com

**<u>Morris Bart, LLC</u>**

Morris Bart (2788)
Mekel Alvarez (22157)
909 Poydras Street, 20th Fl.
New Orleans, LA 70112
Telephone: 504.599.3318
Facsimile: 504.599.3392